UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTIAN NAVARRO** § | | |
|    Plaintiff, § | | |
| § | | **CASE NO: 4:15-cv-399** |
| vs. § | | |
| § | | |
| **CHARLIE THOMAS CHEVROLET,** § | | |
| **LTD. D.B.A. AUTONATION** § | | **JURY DEMAND** |
| **MITSUBISHI, AND AMERICAN** § | | |
| **CREDIT ACCEPTANCE, LLC,** § | | |
|    Defendants. § | | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

    COMES NOW Christian Navarro (hereinafter "Mr. Navarro" or "Plaintiff"), complaining of and against Defendants, Charlie Thomas Chevrolet, Ltd., d.b.a. AutoNation Mitsubishi (hereinafter "AutoNation") and American Credit Acceptance, LLC (hereinafter "ACA") for cause of action and would respectfully state the following:

### I. INTRODUCTION

    1.    This is an action for damages brought by Plaintiff alleging that Defendants violated the Motor Vehicle Information and Cost Saving Act, 49 U.S.C. § 32701 *et seq.* (hereinafter the "Federal Odometer Act") and the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.40 *et. seq.* (hereinafter "DTPA"), common law fraud and intentional misrepresentations.

    2.    Plaintiff's claims are based on Defendant, Charlie Thomas Chevrolet, Ltd., d.b.a. AutoNation Mitsubishi selling Mr. Navarro a Honda Civic that was financed through American Credit Acceptance. AutoNation sold a vehicle to Mr. Navarro that it knew or should have known had an engine that had more mileage that was listed on the Odometer Disclosure. American Credit Acceptance, as the holder in due course, is liable for the extent that AutoNation is liable for damages.

3. Defendants had notice of Plaintiff's claims from a notice letter sent on or about October 21, 2014, pursuant to Tex. Bus. Com. C. § 17.505(a) and Tex. Civ. Pract. Rem. C. § 38.01 et seq. All conditions precedent necessary to maintain this action have been performed or have occurred.

## II. JURISDICTION AND VENUE

4. Jurisdiction of this Court arises under 49 U.S.C. § 32710(b), 28 U.S.C. §§ 1331and 1337, and supplemental jurisdiction for the state law claim is afforded by 28 U.S.C. § 1367. Venue in this district is proper in that the Defendant transacts business here and/or the conduct complained of occurred in Harris County, Houston, Texas.

## III. PARTIES

5. Plaintiff, Christian Navarro, is a natural person who resides in Granite Shoals, Burnet County, Texas.

6. Defendant, Charlie Thomas Chevrolet, Ltd., d.b.a. AutoNation Mitsubishi, is a Texas Limited Partnership doing business in Texas at 7200 Gulf Freeway, Houston, Texas 77017. Defendant may be served by and through its registered agent, Corporation Service Company d.b.a. CSC-Lawyers Incorporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

7. Defendant, American Credit Acceptance, LLC, is a Foreign Limited Liability Company, whose business address is 340 E. Main Street, Spartanburg, South Carolina 29302-1987. Defendant may be served by and through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## IV. FACTUAL ALLEGATIONS

8. On or about March 21, 2014, Mr. Navarro went to AutoNation Mitsubishi to purchase a vehicle. Mr. Navarro purchased a 2007 Honda Civic, VIN # 2HGFA55567H705417. Autonation told Mr. Navarro that the vehicle had 92,687 miles on it. Because of the reputation of Honda and the fact that the factory warranty was for 100,000 miles, Mr. Navarro bought the car. When deciding to purchase, he counted on the fact that the over 7000 miles left on the

vehicle warranty meant that he could get a good few months of driving in to see any problems and major ones would be covered.

9. Mr. Navarro bought the Honda Civic for the sales price of $12,994.00 at an interest rate of 24.68%. His total finance charge was $9,275.34 and his monthly payments were $355.99 for 60 months so all together he was set to pay $21,359.40 for this vehicle.

10. When Mr. Navarro purchased the 2007 Honda Civic, the Odometer Disclosure and the odometer on the car dash stated that the 92,687 were original miles.

11. Soon after purchase, Mr. Navarro began having problems with the engine, which was covered in the 100,000 mile warranty. He took the vehicle to Round Rock Honda for repairs. Instead, he was shocked to learn when the mechanic there showed him that the engine in the vehicle was not the original engine. The engine was actually more worn than the car. Using the VIN number, it could be traced to a salvage car that was wrecked in Indiana a couple years earlier.

12. Round Rock Honda refused to work on the car with the replacement engine. Not only was the vehicle was not under warranty, but Round Rock Honda told him that the replacement was done poorly and much work was needed, work they did not want to touch.

13. No one at AutoNation ever told Mr. Navarro this was not an original engine.

14. The engine in the vehicle that AutoNation sold Mr. Navarro has VIN # 2HGFG21567H711351.

15. Records have revealed that the last reported odometer reading on the _engine_ was 138,438, not the 92,687 as had been disclosed on the Odometer Disclosure. This as well as the major replacement meant no warranty remained on his vehicle.

16. The NADA Guide value for a 2007 Honda Civic SI in "rough trade" condition with 138,438 is $6500.

17. Mr. Navarro was able to get the vehicle running again on his own but has had to incur repair costs and the cost of replacement parts when he had purposely purchased a vehicle he was told was lower mileage, in better condition and under warranty.

18. Because he still owes on the vehicle, Mr. Navarro is still making payments and is forced to still drive the car, even though it is not in safe condition.

19. Mr. Navarro never would have purchased the vehicle at any price if he knew it had a replaced engine, in particular an older engine from a salvage vehicle.

## V. VIOLATION OF THE FEDERAL ODOMETER ACT
**(against all Defendants)**

20. For the reasons set forth above, Defendants violated the Federal Motor Vehicle Information and Cost Savings Act ("Odometer Act") by failing to give accurate disclosures in transferring the car, in violation of 49 U.S.C. §32701 *et seq*.

21. Defendant Autonation had in its possession the motor vehicle and had access to the engine with a different VIN number; thus Autonation had every ability to learn that the miles the engine had gone through was much higher than the stated odometer in the body of the car.

22. If a vehicle is built with an older engine and a newer body, the odometer reading is to be set to the mileage of the older engine; or if that is not possible, then the odometer disclosure statement should state that the true mileage is unknown.

23. Defendant Autonation violated the Federal Motor Vehicle Information and Cost Savings Act with knowledge and intent to defraud.

24. At all times material hereto, Mr. Navarro was a "transferee" as said term is defined at 49 C.F.R. §580.30.

25. At all times material, Autonation was a "dealer" as said term is defined by 49 C.F.R. §580.30.

26. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. § 49 U.S.C. 32101(7).

27. As an experienced franchise motor vehicle dealer, Autonation knew or should have known of the Act and its regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

28. Autonation violated the act with specific intent to defraud, as it knew that the lower mileage reading gave the vehicle a higher value.

29. As a direct and proximate result of the violations of the Act, Autonation is liable to Mr. Navarro in the sum of three times his actual damages or $10,000.00, whichever is greater.

30. Pursuant to 49 U.S.C. §32710(b), Mr. Navarro is entitled to recover his reasonable attorneys' fees and court costs upon entry of judgment in his favor.

31. Under the holder in due course doctrine, American Credit Acceptance is also liable for all violations of the Odometer Act.

## VI. VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

32. Plaintiff is a consumer under the DTPA because he is an individual who acquired goods by purchase as defined by the DTPA.

33. Defendants are corporations that can be sued under the DTPA.

34. AutoNation's practices violated the DTPA by making the following "false, misleading or deceptive acts or practices" within the meaning of the TEX. BUS. & COM. CODE §17.46(b);

- (5) representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not;
- (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;...
- (20) representing that a guarantee or warranty or involves rights or remedies which it does not have or involve; and
- (24) failing to disclose information concerning goods or services which was known at the

time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

35. In addition, AutoNation committed "false, misleading, or deceptive acts or practices" within the meaning of TEX. BUS. & COM. CODE §17.46(a). Scienter is not a prerequisite for DTPA liability. Defendant, AutoNation's actions also constitute an "unconscionable action or court of action: which, to Plaintiff's detriment, took advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree in violation of TEX. BUS. & COM. CODE §17.50(a)(3).

36. Plaintiff is entitled to recover treble damages under TEX. BUS. & COM. CODE §17.50(b)(1) because Defendant acted knowingly. As defined in the context of the DTPA "knowingly" standard is effectively a recklessness or conscious indifference standard because it does not require specific intent by the Defendant to harm the customer. The conduct of AutoNation was committed knowingly because, at the time of the acts and practices complained of Defendant had actual knowledge of the falsity, deception, or unfairness of the acts or practices giving rise to Plaintiff's claims. In addition, and/or in the alternative, Defendant, AutoNation acted knowingly because it had actual awareness of the act, practice, condition, defect or failure constituting the breach of warranty.

37. In addition to and/or in the alternative to its knowing conduct, Defendant AutoNation acted intentionally because, at the time of the acts and practices complained of, Defendant had actual awareness of the falsity, deception or unfairness of the act or practice and acted with a specific intent that Plaintiff acted in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. See TEX. BUS. & COM. CODE §17.50(a)(1)(3). Defendant had actual awareness of the condition, defect, or failure constituting the breach of warranty giving rise to the Plaintiff's claim and acted with specific intent that Plaintiff act in detrimental reliance on the falsity, deception or in detrimental ignorance of the unfairness. See

TEX. BUS. & COM. CODE §17.50(a)(2).  Plaintiff is entitled to recover treble damages under TEX. BUS. & COM. CODE §17.50(b)(1) because Defendant, AutoNation, acted intentionally.

38.     Plaintiff is entitled to recover reasonable and necessary attorney's fees and costs under TEX. BUS. & COM. CODE §17.50(d).  See *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 819 (Tex. 1997).  The purpose of establishing mandatory attorney's fees is to protect the ordinary consumer from false, misleading or deceptive trade practices by well-funded defendants.  As such, a prevailing consumer must be awarded attorney's fees even if his claim is entirely offset by the claims of the opposing party.  *McKinley v. Ddrozd*, 685 S.W.2d 7 (Tex. 1985).  Moreover, attorney's fees are both mandatory and reasonable even if the fees greatly exceed the actual damages awarded to the consumer.  *Jack Roach Ford v. De Urdanavia*, 659 S.W.2d 724 (Tex. App. –Houston [14th Dist.] 1983, no writ) ($20,000.00 in attorney's fees approved on a recovery of $500.00 in actual damages); *Tate v. Wiggins*, 583 S.W.2d 640 (Tex. Civ. App. – Waco 1979, no writ) ($14,500.00 in attorney's fees approved on a recovery of $1,000.00 in actual damages to one of the Plaintiffs and $1,400.00 to the other); *Seabury Homes, Inc. v. Burleson*, 688 S.W.2d 712 (Tex. App. – Fort Worth 1985, no writ) ($15,000.00 in fees approved on a recovery of $2,000.00 in actual damages); IFG *Leasing Co. v. Ellis*, 748 S.W.2d 564 (Tex. App. – Houston [14th Dist.} 1988, no writ) (an award of attorney's fees upheld even though the consumer was only awarded a certificate of title and no monetary damages).

39.     Plaintiff seeks an order permanently enjoining Defendant from violating the DTPA, warranty, and common law and statutory rights of consumer.  See TEX. BUS. & COM. CODE §17.50(b)(2).

40.     Should Plaintiff obtain judgment against Defendant and said judgment is not satisfied within 30 days, Plaintiff will see to place the business of Defendant into receivership.  *See* TEX. BUS. & COM. CODE ANN. §17.59.  The purpose of the receivership is to administer Defendant's business in a manner that will promptly satisfy Plaintiff's judgment against it.  *See* TEX. BUS. & COM. CODE §17.50(b)(4).  Should Plaintiff obtain judgment against Defendant and

said judgment is not satisfied within three months, Plaintiff will see to revoke or suspend the license or certificate authorizing the Defendant to do business in this state.  *See* TEX. BUS. & COM. CODE §17.50(b)(4).

41.	Under the holder in due course doctrine, American Credit Acceptance is also liable for all damages stemming from violations of the Deceptive Trade Practice Act.

## VII. BREACH OF EXPRESS WARRANTIES

42.	All breach of warranty claims in this suit are brought independently and by and through the D.T.P.A. pursuant to §17.50(a)(2).  D.T.P.A. damages sought through these claims are not limited to economic damages but rather include actual damages pursuant to TEX. BUS. & COM. CODE §17.50(h).

43.	Defendant made affirmations of fact or promise to Plaintiff that relate to the vehicle and became part of the basis of the bargain.  This creates an express warranty that the vehicle shall conform to the affirmation or promise.  TEX. BUS. & COM. CODE §2.313(a)(1).  These representations related to the vehicle and to and became part of the basis of the bargain.  This created an express warranty that the vehicle shall conform to the affirmation or promise.  The vehicle did not conform to these representations.  Defendant made descriptions of the vehicle that were made part of the basis of the bargain.  This created an express warranty that the vehicle shall conform to the description.  TEX. BUS. & COM. CODE §2.313(a)(2).  This created an express warranty that the vehicle shall conform to the description.  It did not.

44.	Under the holder in due course doctrine, American Credit Acceptance is also liable for all damages stemming from the breach of warranty.

## VIII.  CLAIM FOR RELIEF FOR FRAUD

45.	The actions of Defendants demonstrate that it made material and false representations about the vehicle and condition of the vehicle.  When Defendants made the representations, it knew them to be false; or made the representations recklessly, as a positive assertion, and without knowledge of its truth.  Defendants made the representations with the

intent that Plaintiff act on it.  Plaintiff in fact relied on the representations, causing Plaintiff injury.  *See Stum v. Stum*, 845 S.W.2d 407, 416 (Tex. App. – Fort Worth 1992), *overruled on other grounds*, *Humphreys v. Meadows*, 938 S.W.2d 750, 751 (Tex. App. – Fort Worth 1996, writ denied.

46. Under the holder in due course doctrine, American Credit Acceptance is also liable for all damages stemming from Fraud.

## IX.  CLAIM FOR RELIEF FOR INTENTIONAL MISREPRESENTATION

47. Defendants made false statements of fact; made promises of future performance with an intent, at the time the promise was made, not to perform as promised; made statements of opinion based on a false statement of fact; made statements of opinion that the maker knew to be false, while claiming or implying to have special knowledge of the subject matter of the opinion.  Plaintiff relied on the misrepresentations of Defendants and suffered physical and economic harm.  *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507,524 (Tex. 1998).

48. Under the holder in due course doctrine, American Credit Acceptance is also liable for all damages stemming from Intentional Misrepresentation.

## X. TRIAL BY JURY

49. Plaintiff is entitled to and hereby demands a trial by jury.

## XI. PRAYER

WHEREFORE, Plaintiff respectfully prays that he have judgment against Defendants for the following:

    i. Economic and actual damages within the jurisdictional limits of this court;

    ii. Adjudging that Defendants violated Deceptive Trade Practices Act;

    iii. Treble economic damages;

    iv. Treble actual damages;

    v. Statutory damages in the amount of $10,000.00;

    vi.    Attorney fees and costs;

    vii.    Exemplary and punitive damages;

    viii.    Prejudgment and post-judgment interest as allowed by law;

    ix.    Costs of suit;

    x.    General relief; and

    xi.    All other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully submitted,
/s/ Amy E. Clark Kleinpeter
Amy E. Clark Kleinpeter
Attorney for Plaintiff
State of Texas Bar Number: 24043761
Hill Country Consumer Law
11940 Jollyville Rd; Suite 220-S
Austin, TX 78759
Phone: (512) 850-5290
Fax:    (626) 737-6030
Attorney for Plaintiff pending *pro hac vice*

/s/ Dana Karni
Dana Karni, Esquire
**Karni Law Firm, P.C.**
4635 Southwest Freeway Suite 645
Houston, Texas 77027
Tele: 713-552-0008
Fax:  713-454-7247
dkarni@texasconsumerdebt.com
SDTX #592484
Texas Bar # 24044379
Attorney for Plaintiff